Sarah K. McMillan, Montana Bar 3634
Western Environmental Law Center
101 North Last Chance Gulch, Suite 101
Helena, Montana 59601
Telephone: 406-708-3062 ext. 122
Email: mcmillan@westernlaw.org

Peter M. K. Frost, applicant, *pro hac vice*
Western Environmental Law Center
P.O. Box 553
Bend, Oregon 97709
Telephone: 541-359-3238
Email: frost@westernlaw.org

Attorneys for Western Watersheds Project

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT, | ) | CV-26-283-GF-JTJ |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| BUREAU OF LAND MANAGEMENT, | ) | |
| BILL GROFFY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | / | |

## INTRODUCTION

1.      Plaintiff Western Watersheds Project (Western Watersheds) hereby respectfully files this suit to seek judicial review of the decision of Defendants Bureau of Land Management et al. (BLM) to cancel grazing leases issued to American Prairie authorizing it to graze bison on federal public lands designated as livestock allotments and administered by the BLM in Montana. This suit is related to a prior suit filed by American Prairie seeking judicial review of the same decision. Western Watersheds seeks a declaratory judgment that BLM's decision and rationale for cancelling the bison permits is contrary to controlling statutes and otherwise unlawful, and vacatur of its decision.

## JURISDICTION

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1131 and 5 U.S.C. § 704. Final agency action subject to judicial review exists under the Administrative Procedure Act (APA). 5 U.S.C. §§ 702, 704. The relief Western Watersheds seeks is proper under 28 U.S.C. §§ 2201–02, 5 U.S.C. §§ 701–06, and 28 U.S.C. § 1361.

## VENUE

3.      Venue is proper in this Court under 28 U.S.C. § 1391(e)(1).

## DIVISIONAL ASSIGNMENT

4.      Pursuant to L.R. CR 3-2(b), Defendant BLM has a field office in Malta, Montana, which first issued the grazing permits for bison at issue in this case, and

Complaint                                          1

which is in Phillips County; the federal public lands within the BLM allotments are in Phillips County; and Western Watersheds' members and supporters visit and view bison on these federal public lands in Phillips County.

PARTIES

5.    Plaintiff Western Watersheds Project is a non-profit conservation group headquartered in Idaho, with offices and staff in Idaho, Arizona, California, Montana, Oregon, Nevada, Washington, and Utah. Western Watersheds is dedicated to protecting and restoring wildlife and watersheds throughout the American West, with a principal goal of achieving healthy native ecosystems on public lands. Western Watersheds has over 50,000 members and supporters. Western Watersheds' members have visited or camped on the federal public lands BLM has designated as livestock allotments during the period when American Prairie has grazed bison. Western Watersheds' members have witnessed the positive effects of bison grazing on the High Plains grasslands, including improvements in riparian areas' health, abundant wildlife, and restored vegetation that contrasts with allotments grazed by cattle. Western Watersheds' members will be injured by BLM's decision to cancel the bison permits, based on their professional, educational, inspirational, personal, aesthetic, and recreational interests. BLM will cause these injuries by requiring removal of bison, and the Court can redress these injuries.

Complaint                                    2

6.    Defendant Bureau of Land Management is an agency within the U.S. Department of the Interior that administers certain federal public lands, including lands designated as livestock allotments on which the BLM Malta Field Office authorized American Prairie to graze bison.

7.    Defendant Bill Groffy is an employee of the U.S. Department of the Interior who, exercising the delegated authority of the BLM director, signed the agency's decision to rescind the bison permits. Mr. Groffy is sued in his official capacity.

FACTS

8.    American Prairie is a registered Montana-based nonprofit organization.

9.    Based on public statements, American Prairie is dedicated to maintaining, stewarding, and preserving the shortgrass prairie ecosystems in Montana through ecosystem-focused management, providing public access, supporting local economies, and working collaboratively with indigenous and local communities.

10.    American Prairie acquired private properties in northern Montana by purchasing land from willing sellers and paying fair market value for the lands.

11.    American Prairie owns the base properties and enjoys grazing preference to seven BLM livestock allotments administered by the BLM Malta Field Office in Phillips County, Montana.

12.    In 2005, BLM authorized American Prairie to graze bison on the Telegraph Creek allotment.

Complaint                                    3

13. In 2008, BLM authorized American Prairie to graze bison on the Box Elder allotment.

14. In 2016, the United States designated the bison as the national mammal.

15. In 2019, American Prairie applied to BLM to renew the bison grazing permits on Telegraph Creek and Box Elder allotments and requested permits to graze bison on the Flat Creek, Whiterock Coulee, French Coulee, Garey Coulee, and East Dry Fork allotments.

16. In 2022, BLM issued a 180-page analysis under the National Environmental Policy Act (NEPA) that evaluated the environmental effects of American Prairie's proposal and found no significant impact to the environment.

17. In its 2022 NEPA analysis and responses to public comments, BLM evaluated its authorities under, and compliance with, federal laws including the Taylor Grazing Act, the Public Rangelands Improvement Act (PRIA), and the Federal Land Policy and Management Act (FLMPA).

18. Responding to public comments regarding the purpose of the Taylor Grazing Act, BLM stated "the productivity, or non-productivity, of livestock or privately owned or controlled animals is not a factor for issuing grazing permits." BLM rejected public comments asserting that the Taylor Grazing Act restricts use of BLM grazing lands to only "production" agriculture as a "misinterpretation of the [Act]." BLM found American Prairie is eligible to hold permits under the Taylor

Complaint 4

Grazing Act's qualification requirements that provide the Secretary may issue grazing permits to "bona fide settlers, residents, and other stock owners."

19. In July 2022, BLM issued a Final Decision authorizing continued and new bison grazing on the allotments in American Prairie's application, with the exception of East Dry Fork allotment, which BLM authorized for cattle grazing.

20. Since 2022, American Prairie has grazed bison on the Telegraph Creek, Box Elder, Flat Creek, Whiterock Coulee, French Coulee, and Garey Coulee allotments.

21. American Prairie tags individual bison on the allotments to identify them.

22. American Prairie tests bison on the allotments for any diseases.

23. American Prairie herds bison on the allotments for feeding practices and pasture management.

24. American Prairie owns the bison it grazes on BLM allotments and the State of Montana's Department of Livestock regulates and taxes these bison as domestic livestock.

25. American Prairie has invested more than $350,000 in BLM-approved fencing improvements on the Telegraph Creek, Box Elder, Flat Creek, Whiterock Coulee, French Coulee, and Garey Coulee allotments.

26. Since BLM issued the permits authorizing American Prairie to graze bison beginning in 2005, BLM has not communicated in any manner or taken any action

Complaint                                      5

to suggest American Prairie is not in full compliance with the terms and conditions of its grazing permits.

27. American Prairie has contributed hundreds of bison it has raised on the allotments to tribal food sovereignty programs.

28. American Prairie has supplied bison that have grazed on the allotments to others as breeding stock to grow bison herds to produce meat and for economic benefits.

29. American Prairie has allowed the public to harvest hundreds of bison raised on the allotments for members of the public to consume bison meat.

30. In its 2022 NEPA analysis, BLM anticipated that grazing bison on the Telegraph Creek, Box Elder, Flat Creek, Whiterock Coulee, French Coulee, and Garey Coulee allotments would improve rangeland conditions.

31. Since 2022, rangeland conditions have significantly improved on allotments American Prairie has grazed with bison.

32. Currently, American Prairie grazes approximately 8,000 cattle and 940 bison on the allotments and deeded properties.

33. The State of Montana and other entities filed administrative appeals and petitions for stay of the BLM 2022 Final Decision. An administrative law judge denied the petitions to stay. American Prairie began grazing bison on the four

Complaint                                    6

allotments newly authorized for bison under the 2022 Final Decision and continued grazing bison on the Telegraph Creek and Box Elder allotments.

34. The administrative appeals were briefed, and the parties were awaiting a Departmental Cases and Hearings Division (DCHD) decision, when on February 3, 2025, BLM filed a motion for voluntary remand without vacatur of the 2022 Final Decision.

35. On December 9, 2025, before the DCHD ruled on the pending appeals or BLM's motion for voluntary remand, the Secretary of the Interior assumed jurisdiction of the appeals. Subsequently, the Secretary of the Interior issued an order granting BLM's motion for vacatur without remand and ordering BLM "to take into account the arguments raised" in the appeals and for BLM to "reconsider" its 2022 Final Decision.

36. On January 16, 2026, BLM issued a Notice of Proposed Decision, proposing to reverse its interpretation of the Taylor Grazing Act, and "cancel" American Prairie's authorization to graze bison on the allotments, converting the allotments to cattle use only.

37. American Prairie filed a protest of the 2026 Proposed Decision and, while opposing the newly-created requirement, also filed evidence establishing that its operations in fact meet the new "production-oriented" requirement. American Prairie established it produces bison that provide the public with thousands of

Complaint                                      7

pounds of bison meat for consumption, and supplies other entities with bison for business herds, genetics, or for sale to generate revenue.

38.    American Prairie disproved BLM's conclusions that its bison are wild and proved the animal husbandry practices used to manage its bison.

39.    Western Watersheds also filed a protest of the 2026 Proposed Decision.

40.    On May 8, 2026, BLM issued its 2026 Final Decision, affirming its new position that the Taylor Grazing Act prohibits BLM from issuing grazing permits unless the "animals to be grazed are domestic and will be used for production-oriented purposes." BLM noted its position does not preclude bison—as a species—from grazing BLM allotments when bison "qualify as livestock under the principles articulated" in its 2026 Final Decision. BLM terminated American Prairie's grazing permits as for any bison and re-issued them for cattle only.

41.    The 2026 Final Decision terminates bison grazing on American Prairie's allotments effective September 30, 2026.

42.    Western Watersheds and others timely filed discretionary administrative appeals and petitions for a stay with the DCHD. While those appeals and requests were pending, the Assistant Secretary of the Interior assumed jurisdiction over the appeals. As a result of the assumption of jurisdiction by the Assistant Secretary of the Interior, the Administrative Law Judge (ALJ) dismissed Western Watersheds' Appeal.

Complaint                                8

43. The petitions for stay must be decided within 45 days of the deadline to file a notice of appeal. 43 C.F.R. § 4171(e). No decision was made as to the petitions for a stay within 45 days of the appeal deadline- either prior to the ALJ's dismissal or after. Western Watersheds has exhausted it administrative remedies and, pursuant to the regulations, the failure to act within the 45 days of the appeal deadline on the petition to stay renders the decision final. 43 C.F.R. §§ 4174 (a) (4) & (b). The 2026 Decision is final agency action subject to judicial review under the APA.

44.    Removing bison from the allotments will cause irreparable harm in financial costs, harm to the health and future of the bison herds, and harm to American Prairie's mission.

45.    Removing bison from the allotments will cause irreparable harm to Western Watersheds and its members, interfering with its mission to protect and restore wildlife and watersheds throughout the American West, removing opportunities to witness, enjoy, and document the restored prairie conditions and increased biodiversity on federal public lands resulting from bison grazing rather than cattle, and reversing the associated rebounds in avian, wildlife, and botanical conditions.

CLAIMS FOR RELIEF

Administrative Procedure Act

46.    Western Watersheds realleges all preceding allegations.

Complaint                                    9

47.    In its 2026 Final Decision, BLM asserts that under the Taylor Grazing Act and other statutory authorities, it may authorize livestock to graze on lands it administers only if livestock are raised or used in a "production-oriented" fashion. BLM is incorrect. There is no such provision in the Taylor Grazing Act nor the Act's implementing regulations. BLM's decision is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

48.    BLM failed to sufficiently explain the 2026 Decision's abrupt reversal in its interpretation of the Taylor Grazing Act. Nor did BLM provide reasoned explanation or discuss the "serious reliance interests" resulting from its 2022 Decision. Pursuant to the APA, these failures are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

49.    BLM failed to accurately discern, evaluate, and portray American Prairie's bison grazing operations in the context of the newly created "production-orientation" requirement, making its 2026 Final Decision arbitrary and capricious, and an abuse of discretion.

50.    BLM's 2026 Final Decision constitutes a "rule" under the APA, because it is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). BLM unlawfully failed to undergo formal rulemaking under the APA.

Complaint                           10

National Environmental Policy Act

51.    Western Watersheds realleges all preceding allegations.

52.    BLM's 2026 Final Decision constitutes a "major Federal action[] significantly affecting the quality of the human environment" under NEPA. 42 U.S.C. § 4332(C). Accordingly, BLM was required to prepare a detailed statement evaluating (i) reasonably foreseeable environmental effects of the proposed agency action; (ii) any reasonably foreseeable adverse environmental effects which cannot be avoided should the proposal be implemented; (iii) a reasonable range of alternatives to the proposed agency action, including an analysis of any negative environmental impacts of not implementing the proposed agency action in the case of a no action alternative, that are technically and economically feasible, and meet the purpose and need of the proposal; (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and (v) any irreversible and irretrievable commitments of Federal resources which would be involved in the proposed agency action should it be implemented. 42 U.S.C. § 4332(C)(i)-(v). BLM unlawfully did not prepare a required statement.

RELIEF REQUESTED

A.    Declare BLM's actions violate the APA, because they are arbitrary and capricious, and abuse of discretion, and otherwise not in accordance with law;

Complaint                                11

B.    Declare BLM's actions violate NEPA;

C.    Set aside and/or vacate BLM's actions;

D.    Grant such other relief as Western Watersheds may seek, or the Court deems

just and proper.

Date: August 5, 2026.          Respectfully submitted,

/s/ Sarah K. McMillan
Sarah K. McMillan, MT Bar 3634
Peter M. K. Frost, applicant, *pro hac vice*

Attorneys for Western Watersheds Project

Complaint                              12